LILY CASSANDRA ALPHONSIS
2934 ½ Beverly Glen Circle #765
Bel Air, CA 90077
(917)470-7561

Plaintiff In Pro Per

FILED

2017 NOV 16  PM 3:30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LILY CASSANDRA ALPHONSIS, | ) | Case No. CV 17-04538 ODW (DFM) |
| Plaintiff, | ) | FIRST AMENDED COMPLAINT FOR: |
| v. | ) | 1. CONSPIRACY |
| | ) | 2. FRAUD |
| UNITED STATES DEPARTMENT OF | ) | 3. CIVIL RIGHTS VIOLATIONS |
| HOMELAND SECURITY; UNITED | ) | 4. HUMAN RIGHTS VIOLATIONS |
| STATES DEPARTMENT OF STATE; | ) | |
| and UNITED STATES OF AMERICA, | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## A CIVIL RIGHTS COMPLAINT

## REQUESTING 12 BILLION DOLLARS IN DAMAGES

## INTRODUCTION

In pursuant to the nonpolitical rights of a citizen, especially the rights of personal liberty guarantied to United States citizens by the 13th and 14th Amendments to the Constitution, and by acts of Congress, Constitutional laws against conspiracy and fraud, human rights laws for rights as freedom from unlawful imprisonment, mistreatments and torture, regarded as belonging fundamentally to all persons, LILY CASSANDRA ALPHONSIS ("Plaintiff"), hereby presents this First Amended Civil Complaint to this Court, and beseeches the courts to review all the conspiratorial activities, fraudulent activities, civil rights and the human rights violations, acted against Plaintiff by the Defendants UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED

1  STATES DEPARTMENT OF STATE and UNITED STATES OF AMERICA, and hold them
2  responsible and accountable for their unlawful actions against Plaintiff.

3  **SUMMARY**

4      Plaintiff LILY CASSANDRA ALPHONSIS hereby alleges that the Defendant UNITED
5  STATES DEPARTMENT OF HOMELAND SECURITY, abetted and conspired with the Los
6  Angeles District Attorney's office, manipulated Plaintiff's identity records, provided misleading
7  material statements under oath, contributed in securing an unlawful detention against Plaintiff, and
8  then placed an illegal hold on Plaintiff by violating Plaintiff's Constitutional rights as a United States
9  citizen to post bail on March 1, 2013.

10      The defendant presented someone else's information to the defendant United States
11  Department of State, and unlawfully revoked Plaintiff's passport. Thereafter, the Defendant United
12  States Department of Homeland Security presented a forged NTA document in an immigration court,
13  and fraudulently obtained an absentia under someone else's name July 15, 2013. The defendant then
14  arrested Plaintiff on January 9, 2014, and attempted to deport Plaintiff to Ghana, where the defendant
15  had alleged Plaintiff was born, because of Plaintiff's connections to Ghana.

16      After failure to deport Plaintiff to Ghana, the defendant and its agents, Thomas May and
17  Robert Miyakawa, obtained by itinerary from the County of Los Angeles Probation Department
18  office, and then changed the date on the old fraudulently obtained absentia from July 15, 2013 to July
19  15, 2014, then forwarded the forged absentia to the United States Border Patrol in Bottineau, North
20  Dakota, and requested for immediate arrest.

21      Subsequently, Plaintiff was arrested on July 18, 2014, and was unlawfully detained by the
22  defendant United States of America to await trial. Thereafter, Plaintiff spent seven months in custody
23  and Plaintiff was exonerated.

24      Plaintiff returned to Los Angeles and appeared in front of the Superior Court Judge, Lisa B.
25  Lench, who had issued a probation violation bench warrant against Plaintiff. Plaintiff learned from
26  the probation department that they received a call from the defendant United States Department of
27  Homeland Security agent, Robert Miyakawa. Robert Miyakawa called on behalf of the defendant and
28  incited the probation department to obtain a bench warrant against Plaintiff. According to the

1  probation officer who conspired with Robert Miyakawa to obtain the bench warrant against Plaintiff,

2  the warrant was obtained because the defendant United States Department of Homeland Security had

3  asserted Plaintiff was a flight risk and had tried to leave the county with false documents, which had

4  resulted in an arrest.  Gabriela Escando also indicated in the probation report that the defendant's

5  agent, Robert Miyakawa had informed Plaintiff had sold her passport and was in the defendant's

6  system as a deportable alien. Due to false statements the defendant's agent had presented to Gabriela

7  Escando, she submitted a report and obtained an extradition warrant against Plaintiff.

8  Although none of defendants have been able to prove their allegations against Plaintiff, and

9  convicted Plaintiff of any immigration or federal crimes, however, the defendant United States

10  Department of Homeland Security and its rogue agents have consistently presented false statements,

11  inserted manufactured criminal records with various AKA under my DNA samples and ha ultimately

12  ruined Plaintiff's once clean record and had questioned Plaintiff's integrity. Thomas May's testimony

13  on March 1, 2013, attested to this fact.  Plaintiff's efforts to get these defendants to institute

14  investigations into the unlawful activities have failed.

15  Furthermore, Plaintiff has exhausted all administrative remedies with these defendants.

16  Hence, Plaintiff is presenting her case once again to this court, hoping that justice will prevail in this

17  case.

18  ## STATEMENT OF PERTINENT FACTS

19  On April 25, 2012, Plaintiff was arrested by the Los Angeles District Attorney's office for

20  crimes Plaintiff did not commit.  A preliminary hearing was set on February 29 through March 1,

21  2013, almost a year later.  During the preliminary hearing various false witnesses and evidence were

22  introduced.

23  The defendant United States Department of Homeland Security presented its agent, Thomsas

24  May who contradicted himself, and provided misleading material statements to cast doubts on my

25  identity, and then contributed in securing an unlawful detention against me.  The defendant then

26  placed a Homeland Security hold on me.  The hold that the defendant placed on Plaintiff, violated

27  Constitutional rights as a United Sates Citizen who was falsely accused of false crimes, and restricted

28  Plaintiff to post the $100,000 bail the court had set for Plaintiff.

While Plaintiff was unlawfully detained in Century Regional Detention Facility, the jail condition and the conspiracy surrounding Plaintiff's case, triggered Plaintiff to take an involuntary plea agreement, with the intention to vacate the involuntary pea upon release. Plaintiff was confident that the defendant United States Department of Homeland Security will investigate the issue about Plaintiff's citizenship ad release Plaintiff immediately once the defendant had confirmed the truth. Hence, on May 5, 2013, Plaintiff appeared in front of Judge Lisa B. Lench and finalized the involuntary plea agreement.

On May 6, 2013, the defendant United Sates Department of Homeland Security took Plaintiff into its custody. Plaintiff was taken to its downtown Los Angeles office, where Plaintiff found the defendant's agent, Thomas May eagerly anticipating to process Plaintiff into custody. Plaintiff did not trust him, therefore, refused to be interviewed by the defendant's agent, and requested another agent or a supervisor to process Plaintiff. Robert Miyakawa took over the intake process and started asking very strange questions. Not knowing that Robert Miyakawa was Thomas May's partner, Plaintiff answered some of his reasonable questions, and ignored the questions that were taken from public records and Western Union money transfer account activities Plaintiff had conducted to friends and family members around the world.

Thomas May then stood right next to Robert Miyakawa. He presented some documents under the name LILY ALPHONSIS MAJDOUB, and attached a photo of a dark skinned woman to the documents, and then asked Plaintiff to sign the documents. Plaintiff refused to sign the documents, because it was not in her name and information. The attached photo was not Plaintiff's photo. After refusing to sign the documents, the defendant was forcing Plaintiff to sign, they decided to fingerprint Plaintiff and insert her DNA samples under that name. Plaintiff refused to be fingerprinted under someone else's information. Thereafter, the agents used illegal tactics and verbal threats in an effort to take her fingerprints, but Plaintiff refused. The defendant's agents Robert Miyakawa and Thomas May manhandled Plaintiff and used excessive force to obtain her fingerprints. Plaintiff was then physically abused and transferred to James A Musick Detention Facility in Irvine, California.

Two days after Plaintiff was housed, she contacted the defendant United States Department of Homeland Security's U.S. citizen investigative unit. Plaintiff's case was investigated and presented

1    to a Federal Judge.  The defendant was ordered to release Plaintiff from it's custody immediately

2    because it had unlawfully detained a U.S. citizen.  On Ma 15, 2013, Plaintiff was released from the

3    defendant United States Department of Homeland Security's custody as a free woman.   John

4    Bolangue the supervisor who supervised her  release apologized to Plaintiff.

5         Once Plaintiff was released on May 15, 2013, the defendant's agents Robert Miyakawa and

6    Thomas May discovered an investigation had revealed Plaintiff was a U.S. citizen with a valid U.S.

7    passport. Therefore, it is against constitutional laws to depart a citizen who was born in the U.S. and

8    holds a valid passport. Based on that, the defendant's agents decided to scheme and violate Plaintiff's

9    constitutional rights. They presented a Social Security information that is other than Plaintiff's own,

10   and conspired with the defendant United States Department of State agent, Jonathan M. Rolbin to

11   illegally revoke Plaintiff's passport on May 15, 2013.  The same day she was released from the

12   defendant's custody.

13        Desperate to arrest Plaintiff again and mess with Plaintiff's life, the defendant and it's agents

14   presented a forged "Notice to Appear" and the letter from the defendant United States Department

15   of State, indicating the revocation of Plaintiff's passport, in the immigration court and filed the forged

16   "NTA" on May 16, 2013.  The defendant was able to obtain a hearing date on July 15, 2013.

17        After Plaintiff was released from the defendant's custody, she went to the Public Storage

18   facility around May 23, 2013, to pay for her outstanding balance, and to take some properties. Upon

19   arriving at the storage facility Plaintiff was handed a search warrant that was dated May 15, 2013.

20   The defendant and it's agents, Thomas May and Robert Miyakawa had submitted false statements and

21   depicted Plaintiff as someone who was involved in terrorist activities, because of Plaintiff's various

22   travels to Dubai, U.A.E., Mambai, India, Istanbul Turkey, and other foreign destinations including

23   Accra, Ghana.  The defendant had alleged in the warrant that she was hiding multiple identifications

24   and travel documents in Plaintiff's storage, hence, the fraudulently obtained warrant was used to

25   access Plaintiff's storage before the time Plaintiff was released from custody on May 15, 2013.  And

26   on May 23, 2013, Plaintiff walked into her storage unit and discovered that all of her valuable items -

27   jewelry, laptop, memorabilia, documents, and photos were all taken from Plaintiff's storage unit.

28   Plaintiff's expensive antique artwork and glassware were all destroyed by the agents.  Plaintiff listed

1   the missing and damaged items, and returned to the storage manager to inquire about the number of

2   people who have ad access into Plaintiff's storage unit.  The manager reviewed Plaintiff's record and

3   confirmed it was only defendant's agents who had accessed Plaintiff's storage unit.  On that note, she

4   went home and contacted the defendant United States Department of Homeland Security about her

5   missing items and the damages they had caused in Plaintiff's storage unit.

6       Plaintiff realized the defendants agents were busy conspiring to ruin Plaintiff's life, while she

7   was busy trying to put her life back together.  Although Plaintiff was wronged by the defendant, she

8   did not pursue any one.

9   However, knowing the consequences of their unlawful actions, the agents decided to scheme and have

10  Plaintiff deported.

11      Around late May 2013, Plaintiff filed a complaint with th inspector general of the United States

12  Department of Homeland Security, against Thomas May and Robert Miyakawa.  Plaintiff was advised

13  to submit an administrative remedy for the resolution of the issues she was having.  Plaintiff sent in

14  the administrative remedy, and narrated the whole story to the defendant.

15      On July 15, 2013, the defendant was able to fraudulently obtain an absentia under the name

16  LILY ALPHONSIS MAJOUB, and an old Beverly Hills address.

17      Around September 2013, when Plaintiff was trying to put her life back together, she utilized

18  her connections around the world and contacted various government offices to launch the

19  international division of Plaintiff's non-profit organization, "World Movie Awards".   While

20  communicating with the Office of the Crown Prince of Dubai, to launch the organization in Dubai,

21  Plaintiff learned the defendant's agents Thomas May and Robert Miyakawa had conspired with their

22  contacts in the California Franchise Tax Board, and had suspended the corporate status of Plaintiff's

23  organization in October 2013.

24      Some of Plaintiff's prospective partners in Dubai and Oslo, Norway, received warning emails

25  with attached documents filled with false arrest records and crimes.  The documents were written on

26  the defendant united States Department of Homeland Security's letterhead, and had a copy of the

27  mugshot the defendant had taken of Plaintiff on May 6, 2013.  The letter indicated she was being

28  investigated and was on the defendant's terrorists watch list.  Plaintiff's partners did not believe it,

1    hence, copies of the documents were forwarded to Plaintiff for Plaintiff's review and answers. She

2    ended up losing her investors.

3         On January 6, 2014, after six months of no revolution to Plaintiff's problems, she filed a

4    litigation against the defendant, and entities that had been used to ruin Plaintiff's life. On January 9,

5    2014, while on her way to have the litigation delivered for defendant United States Department of

6    Homeland Security to be served she was arrested by the defendant's agents Thomas May, Robert

7    Miyakawa and a female agent right outside of a friend's house where she was staying.   The

8    defendant's agents informed Plaintiff that she   was   under arrest for deportation warrant, an

9    "absentia". When she request a copy of the warrant, Robert Miyakawa told Plaintiff that she should

10   not worry about the copy of the warrant, because she would not need it when she got to Ghana. She

11   was given a copy of the defendant United States Department of State's letter indicating that Plaintiff's

12   passport was revoked on May 15, 2013. She was processed and transferred to the Santa Ana jail

13   processing center, where she encountered severe physical abuse from the female deputies.

14        After spending three months in the defendant's custody being mistreated and starved, the

15   defendant released Plaintiff and forced Plaintiff into its supervised program with an ankle monitor

16   on her leg. The defendant then resulted in using unlawful tactics to force Plaintiff to obtain a passport

17   from Ghana, and depart from the U.S., since it had failed to prove it's allegation that she was born

18   in Ghana. After refusing to succumb to the defendant's unlawful tactics to lie to the Ghana Embassy,

19   and obtain a Ghana passport, the defendant's agent, Peter Menles and his female partner decided to

20   call the Ghana Embassy in Washington D.C. The Consulate Office answered and informed the agents

21   the knew about Plaintiff's case and had already sent the report confirming that she was not born in

22   Ghana.  Once the Embassy disconnected the line, Peter Mentes cut the monitoring device on

23   Plaintiff's leg on June 26, 2014 and informed Plaintiff to go and reinstate her passport.

24        Around July 2014, I decided to visit a friend who is a former Marine Digital Expert, who was

25   helping Plaintiff with her case and also authenticating a video disc that was left in Plaintiff's

26   possession Another friend in the music industry who was aware of Plaintiff's struggles and reasons

27   behind them, expressed his interest in the contents of the video disc, but needed the content to be

28   authenticated to allow him to use it for the remake of one of his classic songs, "The Beautiful Ones"

to pay a tribute to the falling icons in the music industry who had been killed by drugs. Therefore, she asked for the permission from the probation department to travel to Minot, North Dakota, to ensure the authentication was done. (See Exhibit B). At the same time of July 2014, the defendant United States Department of Homeland Security and its agent, Robert Miyakawa contacted the county of Los Angeles Probation Department, and obtained Plaintiff's location. Once Plaintiff's location was given to the defendant. The defendant's agents Thomas May and Robert Miyakawa changed the date on the fraudulently obtained deportation warrant that was issued on July 15, 2013, to July 15, 2014. The defendant's agents then forwarded the forged deportation warrant, a fraudulent birth document, and an Amtrak itinerary to the United States Border Patrol, and requested for Plaintiff's immediate arrest.

On July 19, 2014, Plaintiff arrived at the Amtrak train station in Minot, ND, only to be arrested by two U.S. Border Patrol agents. She was arrested for the deportation warrant, and taken to the U.S. Border Patrol station in Bottineau, North Dakota. After being processed into custody, Plaintiff was transferred to the Grand Forks detention Facility. On July 21, 2014, she appeared in front of U.S. Magistrate Judge Karen K. Klein, and was assigned a court appointed counsel Christopher Landcaster to represent the case. Charges of violations of U.S.C.§ 100 (a),(2), 1015( c), and 1544 were filed against her. And through Plaintiff's attorney, she discovered that there was no deportation warrant that was issued on July 15, 2014, for her arrest. The defendant and its agents had changed the date on the old fraudulently obtained absentia from July 15, 2013 to July 15, 2014, and had used the forged warrant to arrest Plaintiff to face new bogus charges they had schemed and leveled against her.

On August 4, 2014, the defendant United States of America filed an order for pre-trial detention, under the case name United States v. her name, and certainly she did not commit any federal crimes when she identified herself as who she was, Lily Cassandra Alphonsis, a United States citizen and nothing else. The defendant United States of America, ignored Plaintiff's pleading to look into the unlawful detention that she was suppressed under, and investigate the bogus case against her.

On September 4, 2014, the defendant charged Plaintiff with making a false claim of citizenship, misuse of a passport, and possession of counterfeit immigration documents.

1     The defendant United States of America, and Plaintiff's court appointed counsel, kept

2 pushing back the date for the trial.  Around October 2014, she received a copy of a "Motion of

3 Limine" the defendant had filed.  The motion was filled with the same false allegations stemmed from

4 the Los Angeles District Attorney's office, and was filled with manufactured criminal records.  The

5 defendant made numerous false allegations against her, but did not provide any supporting facts or

6 evidence to ack up its allegations.  Plaintiff's attorney objected to the "Motion of Limine" and made

7 one point very clear, the photos that were presented in the defendant's discoveries do not look like

8 her.

9     Somewhere around mid November 2014, the defendant came up with a plea agreement.

10 According to Plaintiff's attorney, the defendant had offered once count of plea, guilty for "misuse of

11 a passport" and the three other charges would be dismissed.  She refused the defendant's plea

12 agreement, and informed her attorney to tell the defendant to dismiss all charges against her, or give

13 Plaintiff her day in court.  Thence, the trial date was set for December 3, 2014.  In about on week to

14 the trial, Plaintiff's attorney informed Plaintiff that the defendant had once again requested to push

15 back the trial date to a later date in February 2015.

16     Around November 2014, Plaintiff submitted a petition for writ of habeas corpus for an

17 unlawful detention.  On December 3, 2014, the petition for writ of habeas corpus was filed.  On

18 December 5, 2014, Plaintiff's attorney informed Plaintiff that an urgent hearing was conducted about

19 Plaintiff's petition, and the United States District Judge Ralph Erickson was concerned about her, and

20 so, he had approved the defendant's request for a pre-trial evaluation to see if she was competent to

21 stand trial.

22     On December 8, 2014 the United States Marshal escorted Plaintiff to Sioux Falls South

23 Dakota, where she was transferred into the Con Air to catch a bus at the Federal Transit Center in

24 Oklahoma.  She spent almost two weeks in the Federal Transit Center, and was transported to Caswell

25 Federal Medical Womens Prison in Fort Worth Texas.  After spending almost two months being

26 evaluated by Dr. Christine Anthony, she was transported back to Cass County Jail Facility, where she

27 was housed in Fargo North Dakota.

28     On February 18, 2015 Plaintiff's attorney Christopher Landcaster visited and reviewed the

evaluation report with me.  Thereafter reviewing the report, he refused to give Plaintiff a copy to keep

1    for Plaintiff's records, and informed Plaintiff that based on the report, the defendant United States of

2    America was going to dismiss all charges against her.  Two hours after she met with Plaintiff's

3    attorney the United States Marshall escorted Plaintiff to the United States District for the District of

4    North Dakota courtroom, presided by District Judge Ralph Erickson.  Plaintiff appeared in front of

5    the District Judge Ralph Erickson where the defendant's attorney stated that "based on the evaluation

6    report, all charges against Plaintiff are dismissed".  She was then exonerated by the District Judge,

7    who informed Plaintiff that she was free, but the State of California had issued an extradition warrant

8    against her.  Plaintiff asked the District Judge to review her petition and remove the hold on her.

9            On February 20, 2015 she was released from custody in Fargo North Dakota.  On April 3,

10    2015 a report and recommendation was issued for Plaintiff's habeas corpus recommending Plaintiff

11    pursue her case in Los Angeles.  Cited article III of the constitution limits the jurisdiction of federal

12    courts to actual cases or controversies.  *City of Los Angeles v. Lyons*, 451 U.S. 95., 101 (1983)

13            On May 1, 2015 Plaintiff's petition was dismissed by District Judge Ralph Erickson, because

14    she was no longer in the defendant's custody.  Hence, she did not have any stand to seek for a habeas

15    corpus relief from this court.

16            Plaintiff returned to California around mid May 2015 an contacted the probation department

17    to report.  I learned from the probation department that on July 23, 2015, the defendant United States

18    Department of Homeland Security and its agent Robert Miyakawa had contacted the probation

19    department with false statements about Plaintiff's arrest in North Dakota.  The defendants agent then

20    conspired with probation department officer Gabriela Escando, and incited her to obtain a bench

21    warrant against Plaintiff because "Homeland Security is concerned the defendant is a flight risk and

22    will not return to California upon release from Grand Forks County Detention Center".  (See Exhibit

23    A).

24            Furthermore, the probation officer Gabriela Escando, who did not know that Plaintiff had

25    obtained permission before she traveled to North Dakota nor was she her probation officer to have

26    known anything about Plaintiff to report based her report about Plaintiff on the false statements the

27    defendant and its agent Robert Miyakawa had called her with.  Gabriela Escando then sent the report

28    to Superior Court Judge Lisa B. Lench and obtained a bench warrant against her.  When she requested

1 | to speak with her probation officer, she was told that she had retired.

2 |      On May 21, 2015 Plaintiff appeared in front of Judge Lisa B. Lench to address the warrant

3 | she had issued against her.. The Judge ordered Plaintiff to return on May 29, 2015. On May 29,

4 | 2015, the District Attorney on the case, Susan Jung Townsend showed up and depicted Plaintiff as

5 | a recidivist. Her request for Plaintiff to be remanded was honored by the Judge. She was remanded

6 | and sent to the Century Regional Detention Facility.

7 |      On June 12 2015, Plaintiff returned to court to find the defendant's agents Thomas May and

8 | Robert Miyakawa in the courtroom. Plaintiff's rights to a probation hearing were violated.

9 | Furthermore, she did not concede or yield to Susan Jung Townsend's false allegations, but was

10 | convicted. On June 16, 2015, in the presence of the defendant's agents Thomas May and Robert

11 | Miyakawa, she was sentenced to five years in County Jail. Plaintiff never had the chance to read the

12 | probation report that was used to sentence her until August 2015. It was after she had received and

13 | read the report, then she realized the reason why Plaintiff's attorney had lied to her that he did not

14 | have a copy of the report when she had requested a copy from him on June 12 2015.

15 |      The report that was used to sentence Plaintiff to five years in jail was based on the false

16 | statements from the defendant, United States Department of Homeland Security and its agent Robert

17 | Miyakawa. (See Exhibit A). The report claimed that she had served nine months in custody in North

18 | Dakota and asserted that Robert Miyakawa had informed the probation department that she sold her

19 | original passport, but had claimed to the defendant United States Department of State that her original

20 | passport was stolen. The report goes on to make false allegations about Plaintiff's missing birth

21 | certificate and Plaintiff's citizenship status.

22 |      After examining the content of the probation report that was used to sentence Plaintiff to

23 | five years, it was absolutely clear that, the defendant United States Department of Homeland Security

24 | and its conspirators had conspired with the County of Los Angeles Probation Department to

25 | accomplish their ultimate goal to imprison her; thus, after several unsuccessful attempts to depart her,

26 | and their plots to imprison her for bogus federal crimes, had eventually failed.

27 | ////

28 | ////

## CAUSES OF ACTION

## CONSPIRACY

The conspiratorial activities in this case are derived from the defendant United States Department of Homeland Security's unscrupulous and unlawful acts that were conducted against Plaintiff from February 2013 through June 16, 2015.  Below are the lists of the conspiratorial activities that were acted against her.  Hence, she is beseeching this court to consider these unlawful acts, and then use it's discretionary power to hold the defendants accountable:

1. The United States Department of Homeland Security and it's agent Thomas May, on March 1, 2013 conspired with the County of Los Angeles District Attorney's office and it's Deputy District Attorney Susan Jung Townsend, California Department of Motor Vehicles agent Eduardo Castellon, and presented a false testimony to secure an unlawful detention against me.  The defendant then placed an illegal Homeland Security hold on her, restricted Plaintiff's freedom and violated Plaintiff's constitution rights to post bail.

2.    On May 15, 2013, the defendant and its agents Thomas May and Robert Miyakawa conspired with the defendant United States Department of State agent Jonathan M. Rolbin, and unlawfully manipulated and tampered with the files in Plaintiff's passport applications and then revoked Plaintiff's legally issued passport.

3.  Around July 15, 2014 the defendant and its agents Thomas May and Robert Miyakawa contacted the County of Los Angeles Probation Department and obtained Plaintiff's location.  The defendant and its agents once again conspired with its division United States Border Patrol, its agent Jay Medin, forwarded Plaintiff's Amtrak Train itinerary, and counterfeit birth document to the U.S. Border Patrol and then, used a forged absentia that was dated on July 15, 2014 to falsely arrest Plaintiff on July 18, 2014.

4    The defendant United States Department of Homeland Security and it's agent Robert Miyakawa on June 5, 2015 in a telephone conversation with Gabriela Escando, relayed false statements to her about Plaintiff's identification documents and then conspired with Gabriela Escando to present the false statements in the probation report that was used to sentence Plaintiff to five years in the county jail.  (See the second report in Exhibit A).

**FRAUD**

The fraudulent documents that the defendant United States Department of Homeland Security and its agents Thomas May and Robert Miyakawa have unconstitutionally manufactured and inserted on Plaintiff's record since February 2013 in an effort to depict Plaintiff as someone else, is simply unethical.

Furthermore, the lists of these fraudulent activities that were conducted by the defendants are unequivocally illegal and unconstitutional actions of corrupted agencies and their rogue agents.

1. On May 6, 2013 the defendant United States Department of Homeland Security and its agents Thomas May and Robert Miyakawa manipulated Plaintiff's DNA samples under someone else's information, and then manufactured criminal records, and inserted various AKA and tampered with Plaintiff's records.

2. The defendant United States Department of Homeland Security and its agents, Thomas May and Robert Miyakawa submitted false statements in a document to a judge, they depicted Plaintiff as someone who was involved in terrorist activities, and then obtained a search warrant against Plaintiff on May 15, 2013.  Subsequently, the fraudulently obtained search warrant was used to access Plaintiff's Public Storage unit, and Plaintiff's properties were stolen from her unit.

3. The defendant United States Department of Homeland Security and its agents, Thomas May and Robert Miyakawa forged Plaintiff's signature on a "Notice to Appear" under the name of LILY ALPHONSIS MAJDOUB, filed the NTA document in an immigration court on May 16, 2013, then obtained a hearing date for July 15, 2013.

Consequently, the defendant convinced an immigration Judge Traci Hon and fraudulently obtained an "absentia" on July 15, 2013.

**CIVIL RIGHTS VIOLATIONS**

1. The defendant United States Department of state has intentionally violated Plaintiff's civil rights as a U.S. citizen.  When the defendant did not emphasize and direct the defendant United States Department of Homeland Security to follow its Adjudicators Field Manual Chapter 83, for the proper procedure for "recommending the revocation of U.S. passport to the State Department".

In a violation of its own protocol, the defendant United Sates Department of State conspired

with the defendant United States Department of Homeland Security to unconstitutionally revoke Plaintiff's passport with out any notification to allow Plaintiff to challenge the misleading information that was used to revoke her passport on May 15, 2013

2.  The defendant United States Department of Homeland Security and its agents Thomas May and Robert Miyakaw physically abused Plaintiff by using excessive force to obtain Plaintiff's DNA samples on May 6, 2013. Also on January 9, 2014, the defendant allowed the Santa Ana processing Center female deputies to physically abuse her.

3.  The defendant United States Department of Homeland Security and its agents Thomas May and Robert Miyakawa discriminated against Plaintiff by racially profiling Plaintiff and then accused Plaintiff of "altering her racial identity to disguise who she was", on May 6, 2013, January 9 2014 an on July 18, 2014.

4.  The defendant United States Department of Homeland Security and its agents Thomas May and Robert Miyakawa on July 18, 2014 used a fraudulently obtained absentia and falsely arrested Plaintiff two times.  I was subjected to a double jeopardy, thus two different adjudications for the same warrant, on January 9, 2014 and July 18, 2014.

## **HUMAN RIGHTS VIOLATIONS**

1.  The defendant United States Department of Homeland Security and its agents Thomas May and Robert Miyakawa on May 6, 2013 and January 9, 2014 falsely imprisoned Plaintiff and violated her human rights, which included Plaintiff's God given and Constitutional liberty to pursue happiness, accomplish Plaintiff's goals and to launch Plaintiff's company the "World Movie Awards Organization".

2.  The defendant United States Department of Homeland Security on May 6, 2013 through May 15, 2013 violated Plaintiff's human rights and prisoner rights when she was subjected to starvation.

On January 9, 2014 through April 11, 2014 the defendant unlawfully detained her, mistreated her, and used severe starvation to torture her.  The defendant also denied Plaintiff the access to proper medical care.  In turn, violating Plaintiff's prisoner rights to free access to medical care which is regarded as belonging fundamentally to all prisoners.

3.   On July 21, 2014, the defendant United States of America abetted the unlawful actions of the defendants United States Department of Homeland Security and United States Department of State, and incited to charge Plaintiff with four crimes she did not commit.  The defendant violated Plaintiff's human rights when she was subjected to seven months unlawful detention from July 18, 2014 through February 20, 2015.

4.   The defendant United States of America had failed to institute an investigation into Plaintiff's case, after she submitted various letters and request to the United States Attorney General's office pleasing to the Attorney general to review her case, and prompt the defendants United States Department of Homeland Security and United States Department of State, to rectify the damages that have been done to Plaintiff's identity records.  As a result of the defendants failure to institute investigations into the unlawful actions conducted against Plaintiff by these two defendants, especially the illegal activities ran by the defendant United States Department of Homeland Security she had been suppressed under false imprisonment once again.  A violation of Plaintiff's human rights.

The defendant's Attorney General demonstrated its position on Plaintiff's case when they presented the fraudulently obtained absentia in an objection to the petition for Writ of Habeas Corpus Plaintiff filed on July 29, 2015 after she was incarcerated.  Thence, rather than reviewing Plaintiff's case and investigating the illegal activities she mention in her petition, the defendant United States of America's Attorney General office chose to support the unlawful actions that were acted upon Plaintiff and indicated in its "Memorandum of Points and Authorities" on page 2 paragraph two, that its federal agencies do not admit to any act that had contributed to Plaintiff's current imprisonment.

Hopefully after reviewing the Exhibit, the Attorney General will see the conspiratorial actions that were conducted by its agency the defendant United States Department of Homeland Security and how the defendant's act, played a major role and contributed to the current false imprisonment she had been subjected to and then admit to the fact that its agencies played a major role in the ruining of Plaintiff's life.

**RELIEF**

1.  Plaintiff beseeches the courts to order the defendants to present all the records and

documents under Plaintiff's name, and any other AKA that the defendant United States Department of Homeland Security and its agents have manufactured, altered, inserted under Plaintiff's DNA samples, and under Plaintiff's federal profile for the courts review and verification of Plaintiff's identity.

2. Plaintiff invokes the court's discretionary power and beseech this court to review this complaint and it's Exhibits and hold the defendant United States Department of Homeland Security and its agents Thomas May and Robert Miyakawa accountable for conspiracy, fraud, civil rights and human rights violations against her, and allow Plaintiff to prove to this court the 12 billion dollars worth of damages the defendant and it's conspirators have caused Plaintiff interrupting a once productive and successful life.

3. Plaintiff beseeches the courts to order the defendant United States Department of State to review Plaintiff's passport files and rectify the damages that its agent Jonathan M Rolbin has done, review and remove all the photo-shopped images or photos, and the false information from Plaintiff's file, and then reinstate Plaintiff's passport immediately.

4 Plaintiff beseeches the courts to hold the defendant United States of America accountable for its failure to institute investigations against the defendants unlawful actions against her, and also hold the defendants accountable for the role it's played in violating Plaintiff's human rights.

5. Plaintiff beseeches the courts to review this complaint and hold the defendants the United States Department of Homeland Security, the United States Department of State and the United States of America accountable for their unlawful actions against her, and impose punitive damages, attorney fees, and other legal fees, including court fees on them to pay accordingly.

## CONCLUSION

Plaintiff still has faith in this judicial system, even though she has been terribly wronged. Plaintiff hopes that after this court reviews this civil action, the presiding judge and this court will start asking questions and then demand answers from the dependants and ensure justice prevails in this litigation.

Finally, Plaintiff hopes that this court will ensure that she is given he opportunity to fight for her rights, and that no human being, no matter who they are or where they are from, will ever be

subjected to oppression and the kind of distresses that Plaintiff has been forced to endure.  Plaintiff truly hope that this will be the last litigation Plaintiff will have to file and that this complaint will culminate in the resolution for the absolutely horrific she has been subjected to.

       I, LILY CASSANDRA ALPHONSIS, hereby declare that the foregoing events set forth in the content of this litigation, contains nothing but the truth of the events and circumstance as they unfolded.

Dated: November 15, 2017                Humbly submitted,

LILY CASSANDRA ALPHONSIS

Plaintiff In Pro Per

EXHIBIT A

07/29/2014 07:59 Los Angeles County Probation

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

000043

### PROBATION OFFICER'S REPORT

REPORT SEQUENCE NO. 2

| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff | COURT - DEPT/DIV CEN-132 | ATTY. BARNWELL | JUDGE LENCH |
|---|---|---|---|
| | HEARING 07/25/2014 | EXPIRATION DATE (S) 05/02/2016 | COURT CASE NO./DEF. ID BA384459-01 |
| vs. | C.I.I. NO. A21611871 | | |
| LILY ALPHONSIS MAJDOUB    Defendant | PROBATION NO. X-2091025 | | |
| | DPO ESCANDON | | AREA OFFICE RIVERVIEW |

| WHEREABOUTS GRAND FORKS COUNTY DETENTION CENTER NORTH DAKOTA | ☒ NON-APPEARANCE ☐ INSTRUCTED TO APPEAR BY: _____ |
|---|---|

### SUPPLEMENTAL REPORT

1
2 **REASON FOR HEARING:**

THIS MATTER IS BEFORE THE COURT TO PROVIDE NEW INFORMATION ABOUT THE DEFENDANT
3 THAT HAS BEEN OBTAINED BY THE PROBATION DEPARTMENT.
4
5 **REPORT:**

6 ON 07/23/2014 THE LOS ANGELES COUNTY PROBATION DEPARTMENT RECEIVED A PHONE CALL
7 FROM AGENT ROBERT MIYALCAWA OF THE DEPARTMENT OF HOMELAND SECURITY. HE INFORMED
PROBATION THAT THE DEFENDANT WAS ARRESTED IN NORTH DAKOTA FOR PRESENTING FALSE
8 DOCUMENTS AND USING THEM TO LEAVE AND ENTER THE COUNTRY. THE DEFENDANT
9 ALLEDGELY OBTAINED A U.S PASSPORT USING FALSE DOCUMENTS, SEEING AS SHE IS NOT A
10 UNITES STATED CITIZEN. SHE IS CURRENTLY FACING NEW FEDERAL CHARGES FOR THIS AND SHE
11 ALSO HAS A PENDING ORDER OF REMOVAL WITH IMMIGRATION.  (SEE ATTACHED FEDERAL
12 COMPLAINT).
13
14

*Exhibit A*

76C692G - PROB. 712 (REV. 04/06)

07/29/201_   02:04 p   Los Angeles County Probation

000044

1  HOMELAND SECURITY IS CONCERNED THE DEFENDANT IS A FLIGHT RISK AND WILL NOT RETURN

2  TO CALIFORNIA UPON HER RELEASE FROM THE GRAND FORKS COUNTY DETENTION CENTER.

3  THE DEFENDANT LEFT THE STATE OF CALIFORNIA WITHOUT THE PERMISSION OF THE PROBATION

4  DEPARTMENT. PROBATION WAS NOT AWARE THAT SHE WAS OUT OF THE STATE UNTIL WE

5  RECEIVED THE CALL FROM THE DEPARTMENT OF HOMELAND SECURITY.

6  IN VIEW OF THE CIRCUMSTANCES BROUGHT TO LIGHT BY THE DEPARTMENT OF HOMELAND

7  SECURITY, THE COURT MAY WISH TO ISSUE A BENCH WARRANT SO THAT THE DEFENDANT MAY BE

8  BROUGHT BACK TO LOS ANGELES COUNTY TO FACE THE PROBATION VIOLATION ONCE HER

9  MATTERS IN NORTH DAKOTA ARE RESOLVED. THEREFORE, THE FOLLOWING RECOMMENDATION IS

10  RESPECTFULLY SUBMITTED FOR THE COURT'S CONSIDERATION.

11

12  **RECOMMENDATION:**

13  IT IS RECOMMENDED THE DEFENDANT BE PRELIMINARILY FOUND IN VIOLATION OF PROBATION

14  AND A BENCH WARRANT BE ISSUED.

15

16

17  RESPECTFULLY SUBMITTED,

18

19  JERRY E. POWERS
   CHIEF PROBATION OFFICER

20
   BY:
21  _____          _____
   GABRIELA ESCANDON, DPO               ARTHUR SOSA, SDPO
   TELEPHONE: (626) 579-8529            TELEPHONE:  (626) 579-8506
22  RIVERVIEW AREA OFFICE

   READ AND APPROVED BY:

23

24  SUBMITTED:    -TYPED:    BY:

25  I HAVE READ AND CONSIDERED THE FOREGOING REPORT OF THE PROBATION OFFICER.

26

27  _____          _____
   JUDGE OF THE SUPERIOR COURT                    DATE
28

- 2 – (ALPHONSIS MAJDOUB)
76C692G - PROB. 712 (REV. 04/08)

COURT COPY

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES
### PROBATION OFFICER'S REPORT

000039

REPORT SEQUENCE NO. 2

THE PEOPLE OF THE STATE OF CALIFORNIA,

                                    Plaintiff

vs

LILY CASSANDRA ALPHONSIS          Defendant

| COURT - DEPT/DIV CEN - 132 | ATTY. ENGER (DPD) | JUDGE LENCH |
| HEARING DATE 06/12/2015 | EXPIRATION DATE(S) 05/02/2016 REVOKED | COURT CASE NO./DEF. ID BA384459-01 |
| C.I.I. NO. A21611871 | | |

| TRUE NAME | DPO HOLLING | AREA OFFICE CA1 | PROBATION NO. X- 2091025 |
| LILY MAJDOUB ALPHONIS; LILY ALPHONSIS; LILY ALPHONSIS MAJDOUB | | | |

WHEREABOUTS (ADDRESS/ZIP CODE/TELEPHONE)
CRDFC370

BOOKING NO.   4341029

RECOMMENDATION
VIOL; REVOKE AND IMPOSE

LOS ANGELES SUPERIOR COURT
FILED
JUN 12 2015
Sherri R. Carter, Executive Officer/Clerk
Pamela Cuerno    Deputy

| [ ] NON-APPEARANCE | [X] DEFENDANT INSTRUCTED TO APPEAR BY: | COURT |

CONVICTED OF THE CRIME(S) OF
CT. 1: 550(A)(1)PC - PRESENT/ETC FALSE/ETC CLAIM F/PAY
CT. 2 & 3: 118(A)PC - PERJURY

| DATE OF ORIGINAL GRANT 05/03/2013 | SENTENCE IMPOSITION OF SENTENCE SUSPENDED | JUDGE AT P&S LENCH | PROBATIONARY PERIOD 3 YEARS |

| COUNTY JAIL TIME (TOTAL) 142 DAYS | TIME PRIOR TO P & S 128 DAYS | TIME AS A CONDITION 128 DAYS |

### REASON FOR HEARING:

THE DEFENDANT LAST APPEARED BEFORE THE COURT AS A RESULT OF HAVING BEEN ARRESTED/SURRENDERED ON THE AUTHORITY OF THE BENCH WARRANT ISSUED ON 07/30/2014 . THE MATTER WAS CONTINUED TO THE INSTANT DATE FOR PROBATION REPORT.

### RECORD BUREAU CLEARANCE:

THIS CASE HAS BEEN REGISTERED WITH THE CALIFORNIA DEPARTMENT OF JUSTICE, BUREAU OF CRIMINAL IDENTIFICATION. A CHECK WITH THIS AGENCY, FBI RECORDS AND LOCAL LAW ENFORCEMENT AGENCIES REVEALED THE FOLLOWING INFORMATION NOT PREVIOUSLY REPORTED TO THE COURT SINCE THE GRANTING OF PROBATION:

07/19/2014          U.S. BORDER PATROL/NORTH DAKOTA - CHARGE:  0302 (FALSE CITIZENSHIP).

                    (PLEASE SEE THE INTERESTED PARTIES SECTION CONCERNING ADDITIONAL INFORMATION PERTAINING TO THIS ARREST).

76P727 – PROB. 241BW (REV. 03/2010)

**Probation Department's Official Copy - Date Prepared: 06/08/2015**


(Exhibit F) is 4 pages.

**CONDUCT UNDER SUPERVISION:**

000040

1   REGARDING CASE NUMBER  #BA384459-01, PROBATION RECORDS INDICATE THE FOLLOWING:

2   **REPORTING:**

3   ☒ DEFENDANT LAST REPORTED TO PROBATION ON 07/14/2014 BY KIOSK

4   AUTOMATED REPORTING SYSTEM.    TO DATE, DEFENDANT HAS REPORTED A TOTAL OF (11) TIMES.

5   ☐ DEFENDANT HAS NOT REPORTED FOR PROBATION SUPERVISION SINCE HIS

6   GRANT DATE.

7   **PAYMENTS:**

8   ☐ DEFENDANT HAS MADE PAYMENTS TOWARDS HIS FINANCIAL OBLIGATION.

9   TO DATE, HE HAS MADE A TOTAL OF () PAYMENTS TOTALING $00.00, TOWARDS HIS BALANCE. HE

10   OWES $N/A TOWARDS RESTITUTION, AND $        TOWARDS COSTS OF PROBATION SERVICES.

11   ☒ DEFENDANT HAS NOT MADE ANY PAYMENTS TOWARDS HIS FINANCIAL

12   OBLIGATIONS. THE DEFENDANT'S OUTSTANDING FINANCIAL BALANCE IS, $3,486.00.

13   **CONDITIONS:**

14   ☒ ADDITIONAL CONDITIONS OF PROBATION INCLUDE

15   DEFENDANT TO PROVIDE A D.N.A. SAMPLE. ACCORDING TO PROBATION RECORDS AND THE

16   DEFENDANT'S STATE IDENTIFICATION CRIMINAL HISTORY, THE DEFENDANT HAS PROVIDED A D.N.A.

17   SAMPLE.

18   ☒ DEFENDANT HAS FAILED TO COMPLY WITH THE FOLLOWING CONDITIONS

19   OF PROBATION.  REPORT FOR SUPERVISION; AND OBEY ALL LAWS AND ORDERS OF THE COURT.

20   **INTERESTED PARTIES:**

21   ON 06/05/2015, DISCOVERED FROM THE PROBATION DEPARTMENT'S ADULT PROBATION SYSTEM (APS),

22   SUPERVISION CASE NOTES (CHRONOLOGICAL ENTRIES), THIS OFFICER LEARNED THE DEFENDANT

23   HAS BEEN UNDER INVESTIGATION FOR USING A FALSE PASSPORT DURING HER ARREST IN NORTH

24   DAKOTA, WHERE THE DEFENDANT SERVED APPROXIMATELY NINE MONTHS I.C.E. CUSTODY.

25

26   ON THE AFOREMENTIONED DATE, A TELEPHONE CONVERSATION WITH I.C.E. AGENT, ROBERT

27   MIYAKAWA (310) 493-4923, REVEALED THE DEFENDANT HAS CLAIMED SHE IS A UNITED STATES

28   CITIZEN; I.C.E. INVESTIGATION RECORDS ALSO REVEALED THE DEFENDANT WAS BORN IN GHANA,

AFRICA., BUT LATER PROVIDED LOS ANGELES COUNTY WITH A BIRTH CERTIFICATE INDICATING THE

76P727 – PROB. 241BW (REV. 03/2010)

DEFENDANT IS A UNITED STATES CITIZEN – HOWEVER, ACCORDING TO AGENT R. MIYAKAWA, THE DEFENDANT'S RECORDED BIRTH CERTIFICATE WAS LATER PRONOUNCED FRAUDULENT, AND IT WAS DETERMINED THE DEFENDANT IS NOT AN UNITED STATES CITIZEN.

FURTHERMORE, AGENT R. MIYAKAWA INFORMS THE DEFENDANT SOLD HER ORIGINAL PASSPORT BUT CLAIMED, TO THE U.S. STATE DEPARTMENT, HER ORIGINAL PASSPORT WAS STOLEN, AND OBTAINED A PASSPORT COPY – WHICH, ON 07/19/2014, THE DEFENDANT PRESENTED TO THE UNITED STATES BORDER PATROL/NORTH DAKOTA, WHICH RESULTED IN HER ARREST.

ON 06/08/2015, THIS OFFICER RECEIVED A TELECOMMUNICATIONS MESSAGE FROM THE IMMIGRATION CUSTOMS ENFORCEMENT (ICE) / ENFORCEMENT AND REMOVAL OPERATIONS (ERO) OFFICE, WHICH INFORMED ON 07/15/2013, (ICE) ISSUED A FINAL ORDER OF REMOVAL.   FURTHERMORE, THE AFOREMENTIONED MESSAGE INDICATED THE DEFENDANT WAS GRANTED A "STAY OF REMOVAL," AND ACCORDING TO (ICE) RECORDS, THE DEFENDANT APPEARS TO HAVE AN OUTSTANDING WARRANT OF REMOVAL PENDING WITH (ICE).

**TOLLING OF TIME:**

PROBATION WAS ORIGINALLY GRANTED ON 05/03/2013 . PROBATION HAS BEEN ACTIVE FOR A TOTAL OF 433 DAYS.   SHOULD THE COURT REINSTATE PROBATION ON THE INSTANT DATE, THE NEW EXPIRATION DATE WOULD BE 04/04/2017.

**EVALUATION:**

THE COURT HAS FOR ITS CONSIDERATION  A DEFENDANT, WHO SINCE JULY 2014, HAS FAILED TO REPORT FOR SUPERVISION.  FURTHER INVESTIGATION HAS REVEALED THE DEFENDANT'S ABSENCE FROM PROBATION SUPERVISION LIKELY RESULTED FROM HER ATTEMPT TO REPEATEDLY DECEIVE UNITED STATES IMMIGRATION OFFICIALS, CONCERNING HER IMMIGRATION STATUS; IT APPEARS THE DEFENDANT'S ATTEMPTS HAVE UNFOLDED HER TRUE IMMIGRATION STATUS, WHICH CATEGORIZES HER AS A "DEPORTABLE ALIEN.".

THUS, THE DEFENDANT'S IMMIGRATION ISSUES, NOTWITHSTANDING, THE UNDERSIGNED OPINES THE DEFENDANT IS NO LONGER A VIABLE CANDIDATE FOR PROBATION SUPERVISION.   FOR APPROXIMATELY ONE YEAR, THE DEFENDANT HAS FAILED TO REPORT FOR SUPERVISION, IN ADDITION TO, TRAVELING OUT-OF-STATE WITHOUT THE COURT'S AND/OR PROBATION

Probation Department's Official Copy - Date Prepared: 06/08/2015

DEPARTMENT'S AUTHORIZATION.  DURING SAID TRAVEL, THE DEFENDANT SUSTAINED A FEDERAL ARREST, WHICH RESULTED IN THE DISCOVERY OF HER CITIZENSHIP FALSIFICATION.  HENCE, THE UNDERSIGNED STRONGLY RECOMMENDS THE DEFENDANT'S PROBATION GRANT REMAIN REVOKED, AND THE COURT IMPOSE SENTENCE.

**SOURCE OF INFORMATION AND CONTACT INFORMATION:**

THIS REPORT WAS PREPARED FROM ELECTRONIC RECORDS AND/OR STATEMENTS FROM THE SUPERVISION OFFICER.  THE UNDERSIGNED HAS HAD NO DIRECT CONTACT WITH THE PROBATIONER. THE UNDERSIGNED DECLARES THAT THE INFORMATION IN THIS REPORT ACCURATELY REFLECTS THE INFORMATION CONTAINED IN THE PROBATION RECORDS AND ANY INFORMATION CONVEYED BY THE SUPERVISION DEPUTY.  THE SUPERVISION OFFICE IS RIVERVIEW.  THE LAST SUPERVISION DEPUTY OF RECORD IS GABRIELA ESCANDON (PHONE: 626-579-8529).    THE SUPERVISING DEPUTY PROBATION OFFICER IS N/A (PHONE: N/A).

**RECOMMENDATION:**

IT IS RESPECTFULLY RECOMMENDED THE DEFENDANT BE FOUND IN VIOLATION OF PROBATION; PROBATION REMAIN REVOKED AND A SENTENCE BE PRONOUNCED AND IMPOSED.

IF PROBATION IS REINSTATED, THE DEFENDANT IS ORDERED TO REPORT TO THE  ASCOT INTAKE

210 W. TEMPLE ST., RM 3-516 LOS ANGELES, CA 90012 (213) 893-0483

RESPECTFULLY SUBMITTED,

JERRY E. POWERS
CHIEF PROBATION OFFICER                              READ AND APPROVED BY:

BY: _____         _____
SERGIO HOLLING, DPO                                      HORACIO RAMIREZ, SDPO
TELEPHONE:  (562) 974-6731                              TELEPHONE: (213) 974-9390
CENTRAL ADULT INVESTIGATIONS OFFICE

SUBMITTED:        TYPED:         BY:     :     (   )

I HAVE READ AND CONSIDERED THE FOREGOING REPORT OF THE PROBATION OFFICER.

_____         _____
     JUDGE OF THE SUPERIOR COURT                              DATE

76P727 – PROB. 241BW (REV. 03/2010)              **Probation Department's Official Copy – Date Prepared: 06/08/2015**

07/23/2014   02:34 p   los Angeles County Probation

Jul-23-14   09:58   From-                                    T-126  P.002/005  F-224
                                                             **000045**

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

## DISTRICT OF NORTH DAKOTA

UNITED STATES OF AMERICA

V:                                                    **CRIMINAL COMPLAINT**

AlPHONSIS-Majdoub, Lily

                                   CASE NUMBER:

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief. On or about _____July 18, 2014_____ in ___Ward & Bottineau___ County, in the

District of _____North Dakota_____ defendant(s) did,

knowingly and willfully made materially false, fictitious, or fraudulent statement or representation

uses or attempts to use any certificate of arrival, declaration of intention, certificate of naturalization, certificate
of citizenship or other documentary evidence of naturalization or of citizenship, or any duplicate or copy
thereof, knowing the same to have been procured by fraud or false evidence or without required appearance or
hearing of the applicant in court or otherwise unlawfully obtained

willfully and knowingly uses or attempts to use any passport in violation of the conditions or restrictions therein
contained, or of the rules prescribed pursuant to the laws regulating the issuance of passports

in violation of Title ___18___ United States Code, Section(s) ___1001 (a)(2) , 1015 (c) & 1544___

I further state that I am a(n) ___Border Patrol Agent___ and that this complaint is based on the following

facts: SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made part hereof: ☒ Yes ☐ No

_____
Signature of Complainant
Jay Medin
Border Patrol Agent

Sworn to before me and subscribed in my presence,

__July 21, 2014_____                    at __Grand Forks and Fargo, North Dakota by telephone__
Date                                             City and State

Karen K. Klein, U.S. Magistrate Judge          _____
Name & Title of Judicial Officer               Signature of Judicial Officer

# EXHIBIT B

| State of Minnesota<br>Carver County | District Court<br>First District |
|---|---|

Court File Number:  10-PR-16-46

Case Type:  Special Administration

## Mailing Label for All Files

LILY CASSANDRA ALPHONSIS
BK NO 4340129
CRDF
11705 SOUTH ALAMEDA STREET
LYNWOOD CA 90262

In re the Estate of Prince Rogers Nelson, Deceased  This case consists of additional volumes.
For documents filed 04-26-16 to 10-09-16, see file number 10-PR-16-46A
For documents filed 10-10-16 to 2-1-17, see file number 10-PR-16-46B
For documents filed on 2-2-17 and later, see file number 10-PR-16-46

Please find enclosed, documents from Carver County Court Administration.

If you have any questions, please call 952-361-1420.

Dated: March 17, 2017

Kristen Trebil-Halbersma
Court Administrator
Carver County District Court
604 East Fourth Street
Chaska Minnesota  55318

Exhibit B

State of Minnesota

Carver County

District Court

First Judicial District

Court File Number: **10-PR-16-46**

Case Type: Special Administration

**Notice of Filing of Order**

**FILED**

APR 0 5 2017

CARVER COUNTY COURTS

---

**In re the Estate of Prince Rogers Nelson, Deceased. This case consists of additional volumes.**

**For documents filed 04-26-16 to 10-09-16, see file number 10-PR-16-46A**
**For documents filed 10-10-16 to 2-1-17, see file number 10-PR-16-46B**
**For document filed on 2-2-17 and later, see file number 10-PR-16-46**

You are notified that the following Order(s) was/were filed on this date:

Order Granting Motion To File Unredacted Versions Of Bremer Trust's Objections To Bremer Trust's Objections To Bremer Trust's Accounting Through January 31, 2017 And Bremer Trust's Response To Omarr Baker And Tyka Nelson's Objections To Stinson Leonard Street, LLP'S Fee Statements Through January 31, 2017 Under Seal

Dated: **Manual entry**

Kristen Trebil-Halbersma
Court Administrator
Carver County District Court
604 East Fourth Street
Chaska, MN 55318
952-361-1420

cc:   See page 2.

A true and correct copy of this notice has been transmitted pursuant to Minnesota Rules of Civil Procedure, Rule 77.04.
All public orders may be accessed at:
http://www.mncourts.gov/InReTheEstateofPrinceRogersNelson.aspx.
Confidential or sealed orders are enclosed for the appropriate party(ies).

4/5/2017 11:15 AM Scanned by Carver County Court Administration

STATE OF MINNESOTA

**FILED**

APR 0 5 2017

COUNTY OF CARVER

**CARVER COUNTY COURTS**

DISTRICT COURT

FIRST JUDICIAL DISTRICT
PROBATE DIVISION
Case Type: Special Administration

In the Matter of:

Estate of Prince Rogers Nelson,

Decedent,

and

Tyka Nelson,

Petitioner.

Court File No. 10-PR-16-46

**ORDER GRANTING MOTION TO FILE
UNREDACTED VERSIONS OF BREMER
TRUST'S RESPONSE TO OMARR
BAKER'S OBJECTIONS TO BREMER
TRUST'S ACCOUNTING THROUGH
JANUARY 31, 2017 AND BREMER
TRUST'S RESPONSE TO OMARR
BAKER AND TYKA NELSON'S
OBJECTIONS TO STINSON LEONARD
STREET, LLP'S FEE STATEMENTS
THROUGH JANUARY 31, 2017 UNDER
SEAL**

The above-entitled matter came before the undersigned on March 21, 2017, without a hearing. On March 17, 2017, Bremer Trust National Association filed with the Court Bremer Trust's Response to Omarr Baker's Objections to Bremer Trust's Accounting through January 31, 2017 and Bremer Trust's Response to Omarr Baker and Tyka Nelson's Objections to Stinson Leonard Street, LLP's Fee Statements Through January 31, 2017. Bremer Trust filed public redacted versions of these documents and unredacted versions under seal. Because the redacted content reflects contain confidential business information, public filings of that content could impede the effective administrative of the Estate.

Therefore, the Court makes the following:

**ORDER**

1.  Based upon the confidential nature of the redacted contents of the above-named documents, they may be filed and kept under seal under further order of this Court.

Dated: _March 21_, 2017

BY THE COURT:

Kevin W. Eide
Judge of District Court

1

## PROOF OF SERVICE

2 STATE OF CALIFORNIA, COUNTY OF ORANGE

3      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 3848 Campus
4 Drive, Suite 103, Newport Beach CA 92660.

5      On November 15, 2017, I served the foregoing document described as:
**1st AMENDED COMPLAINT** on all interested parties in this action as follows:
6

7      United States Attorney
300 North Los Angeles Street, Suite 7516
Los Angeles CA 90012
8

9 [X]   **BY MAIL**: I placed true copies of the foregoing document(s) enclosed in
sealed envelopes addressed as shown on the Service List.  I am 'readily
10 familiar" with the practice for collecting and processing correspondence for
mailing with the United States Postal Service.  Under that practice, it would be
11 deposited with the United States Postal Service that same day in the ordinary
course of business.  Such envelope(s) were placed for collection and mailing
12 with postage thereon fully prepaid at Newport Beach, California, on that same
day following ordinary business practices.
13

14 []   **BY E-MAIL** I emailed the foregoing document(s) to the emails on the attached
Service List.

15 []   **VIA FACSIMILE -** I faxed said document to the office of the addressee
shown on the attached SERVICE LIST and the transmission was reported as
16 complete and without error pursuant to Rule 2.306 of the California Rules of
Court.
17

18      I declare under penalty of perjury under the laws of the State of California that
the above is true and correct.
19

20 Executed on November 15, 2017, at Newport Beach, California.

21

22                         Teresa A Foltz

23

24

25

26

27

28